# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1040
_____

| | | |
|---|---|---|
| Patricia Marie Boyd, | * | |
| | * | |
| Petitioner-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| State of Minnesota, | * | |
| | * | |
| Respondent-Appellee. | * | |

_____

Submitted: October 15, 2001

Filed: December 17, 2001
_____

Before WOLLMAN, Chief Judge, LAY and RILEY, Circuit Judges.
_____

LAY, Circuit Judge.

Patricia Boyd appeals the district court's[1] denial of her petition for a writ of habeas corpus. In 1996, after the apparent drowning death of her newborn baby, Boyd was charged with murder in the second degree, manslaughter in the second degree, and interference with a dead body. She was tried in the district court of Mower County, Minnesota, and convicted of all three charges. Boyd dismissed her direct appeal and sought post-conviction relief in state district court. After an

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

evidentiary hearing, the court denied her request for relief. The Minnesota Court of Appeals upheld the state district court's decision, <u>Boyd v. State</u>, No. C1-98-1046 (Minn. App. Apr. 6, 1999) (unpublished opinion); the Minnesota Supreme Court denied discretionary review. In her petition for federal habeas corpus relief, Boyd argues (1) there was insufficient evidence to prove her infant daughter was born alive, (2) the state trial judge impermissibly instructed the jury to presume Boyd's daughter was born alive, and (3) her trial counsel's failure to challenge the sufficiency of the evidence and his failure to object to the jury instructions amounted to ineffective assistance of counsel. We reject Boyd's claims and affirm the district court's denial of relief.

## I. FACTS

On May 24, 1995, Patricia Boyd delivered her baby into the toilet at her home. Boyd was approximately thirty-six weeks pregnant when she gave birth. She saw the infant's toes sticking out from a pool of bloody water, its head submerged. Boyd claimed the baby was not moving and she believed it to be dead. She cleaned herself up and asked her neighbor to pick her husband up from work. Steven Boyd came home, put the infant in a plastic bag, and went back to work. When he returned a few hours later, the Boyds went to the hospital.

Boyd's medical examination revealed no abnormalities. Although she told the treating nurse she had been "four to five months" pregnant and had miscarried, the medical personnel were shocked by the contents of the plastic bag. The infant appeared to the hospital personnel to be near-term. Police went to Boyd's residence around midnight to question her. She told officers she had not touched the infant after it landed in the toilet.[2] The officers requested an autopsy be performed. Dr.

---

[2]In her fourth interview with investigators, Boyd conceded she "might have touched the foot or something."

Susan Roe, Assistant Medical Examiner for Ramsey and Washington Counties, found the amount of air in the lungs and gastrointestinal tract was inconsistent with Boyd's claim that the baby dropped immediately from the birth canal into the water in the toilet. Dr. Roe opined that, although it is never possible to make a certain diagnosis of drowning, the lack of competing causes of death in this case suggested the infant had drowned. Dr. John Plunkett, the Coroner for Dakota, Carver, Scott and Chisago Counties, testified as an expert for the defense. He generally agreed with Dr. Roe that the infant lived, breathed, swallowed air, and had no organ abnormalities, congenital defects, or trauma that could explain the infant's death. While he found the cause of death most likely to be drowning, he noted the infant could have breathed between emerging from the birth canal and hitting the water in the toilet.

After six days of testimony, the case was submitted to the jury with instructions on second-degree murder, second-degree manslaughter, and interference with a dead body. Neither party objected to the instructions–taken from the Minnesota Jury Instruction Guide–despite their failure to explicitly require the jury to determine if the infant had been born alive. The state court jury returned a guilty verdict on all three counts. After withdrawing her direct appeal, Boyd was granted an evidentiary hearing on her state petition for post-conviction relief. With new counsel, she called Dr. Roe and her original trial counsel, Rich McCluer, as witnesses. Dr. Roe conceded her opinion that the baby was born alive was not based on the common-law definition of the term. McCluer stated that he was aware of the distinction between the medical and common-law definitions of "born alive," had researched the issue before trial, and discussed the evidence and issues with Dr. Plunkett. He testified that he had concluded the infant was born alive under the common-law definition and the better trial strategy was to focus on the issue of Boyd's intent.

## II. ANALYSIS

### A. Standard of Review

A federal court is required to deny habeas corpus relief where a claim is adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision "mandates a deferential review of state court decisions." James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). "[M]ere disagreement with the [state] court's conclusions is not enough to warrant habeas relief." Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999) (quoting Matteo v. Superintendent SCI Albion, 177 F.3d 877, 890 (3rd Cir. 1999)). Under the first prong of the statute, relief should not be granted "unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id. at 760 (quoting Matteo, 177 F.3d at 890). Under the second prong, a state court's determination on the merits of a factual issue is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).

### B. Insufficient Evidence

Boyd first claims that, as a matter of law, there was insufficient evidence to prove that her infant was born alive under the common-law rule, which she argues

should be used to interpret Minnesota's homicide statute.[3] She argues the State failed to prove beyond a reasonable doubt every fact necessary to constitute the crime with which she was charged, denying her due process of law. See In re Winship, 397 U.S. 358, 364 (1970) (holding "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). However, on review of the denial of Boyd's petition for state post-conviction relief, the Minnesota Court of Appeals found no need to answer the question of whether Minnesota requires proof that the infant was born alive under the demanding common-law standard.

> [W]e need not untangle the knotty issue of what it means to be "born alive" with a "separate and independent existence." The child's status as a human being was never brought into issue. Both parties presumed the child was born alive. . . . Neither party made pretrial disclosures or presented evidence to the jury on the issue.

Boyd v. State, No. C1-98-1046, slip op. at 9 (Minn. App. Apr. 6, 1999). Because this claim was not raised at trial, the state court of appeals considered it waived and we are foreclosed from granting habeas relief without a showing of cause and prejudice or actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998). Ineffective assistance of counsel constitutes "cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 488 (1986). Nevertheless, as we later discuss, we do not find Boyd's trial counsel to be constitutionally deficient. See infra. Accordingly, we reject Boyd's claim on this issue.[4]

---

[3]The homicide statute makes it second degree murder to cause "the death of a human being with intent to effect the death of that person . . . ." Minn. Stat. § 609.19(1).

[4]Boyd's argument would fail even if it was not waived. Although the Minnesota Supreme Court has twice addressed the term "human being" in the state homicide statutes, it has never explicitly adopted the exacting common-law standard

## C. Jury Instructions

Boyd also argues that the trial court's failure to instruct the jury on the question of whether her child was born alive constituted a "fundamental defect that resulted in a complete miscarriage of justice or so infected the entire trial as to deprive the defendant of a fair trial." Berrisford v. Wood, 826 F.2d 747, 752 (8th Cir. 1987). However, at trial, Boyd did not request an instruction requiring the jury to determine whether the infant was born alive. As noted above, waiver of such a claim requires a showing of cause and prejudice before a federal court can grant habeas relief. Bousley, 523 U.S. at 622. "[F]ailure to propose specific jury instructions or to object to instructions before they are given to the jury generally constitutes a waiver of the right to appeal." Boyd, slip op. at 10. Despite this waiver, the Minnesota Court of Appeals considered the issue and concluded, based on state law, "the trial court did not commit plain error by failing to give a 'born-alive' instruction." Id. at 13.

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). We agree with the conclusion of the federal magistrate judge:

---

as Boyd claims. Boyd, slip op. at 9 ("Our supreme court has not directly addressed this question."); see State v. Kinsky, 348 N.W.2d 319 (Minn. 1984); State v. Soto, 378 N.W.2d 625 (Minn. 1985). Although it has acknowledged other jurisdictions require the state to prove "the infant was 'born alive and had an independent and separate existence from its mother,'" Kinsky, 348 N.W.2d at 325, the Minnesota Supreme Court has either found that there was clearly enough evidence to meet such a standard, see id., or that the words "human being" in a state homicide statute do not encompass a viable fetus. Soto, 378 N.W.2d at 630. Therefore, it is not clear the Minnesota Supreme Court would ultimately adopt the common-law standard upon which Boyd's claim rests. The jury found Boyd guilty of second-degree murder, which implicitly required finding the infant was born alive. There is sufficient record evidence to support such a finding and, thus, it would not constitute an unreasonable determination of the facts in light of the evidence presented at trial.

> Given the absence of a Minnesota Supreme Court opinion requiring that a "born alive" instruction be issued in infanticide cases, the [state] trial court's decision not to include such an instruction, made with the knowing consent of the Petitioner, was not "a fundamental defect which inherently results in a complete miscarriage of justice, [o]r an omission inconsistent with the rudimentary demands of fair procedure," such that Petitioner was denied due process.

Boyd v. State, No. 00-725 JMR/FLN (D. Minn. Oct. 25, 2000) (report and recommendation of Chief Magistrate Judge Franklin L. Noel) (quoting Frey v. Leapley, 931 F.2d 1253, 1255 (8th Cir. 1991)). Therefore, we affirm the district court on this issue.

## D. Ineffective Assistance of Counsel

Lastly, Boyd argues her trial counsel's failure to challenge the sufficiency of the evidence and failure to object to the jury instruction was prejudicial because the evidence was insufficient. The defendant is denied her Sixth Amendment right to assistance of counsel if (1) counsel's performance was objectively unreasonable, and (2) counsel's error reasonably caused the jury to convict. Strickland v. Washington, 466 U.S. 668, 688 (1984). As previously noted, ineffective assistance of counsel would establish "cause," satisfying the first step in overcoming the prohibition against granting habeas on procedurally-barred issues. See Murray, 477 U.S. at 488.

Courts must begin by presuming trial counsel was effective. See Strickland, 466 U.S. at 689. Moreover, strategic choices of trial counsel are entitled to great deference. Id. Boyd is unable to overcome this burden. At the post-conviction evidentiary hearing, Boyd's trial counsel testified that he had researched the born-alive issue. He also contacted the defense witness, Dr. Plunkett, who believed the question of live birth was not an issue in this case. Trial counsel, therefore, made the strategic decision not to raise the born-alive issue, instead focusing on the intent

-7-

element of the crime. We agree with the district court's conclusion that the actions of Boyd's trial counsel were objectively reasonable. We therefore affirm the district court's dismissal on this claim as well.

## III.  CONCLUSION

For the forgoing reasons we affirm the district court's denial of Boyd's petition for a writ of habeas corpus.

AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.