# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  02-3967
_____

Mark D. Whitehead,                 *
                                    *

          Petitioner - Appellant,    *

                                    *  Appeal from the United States
     v.                             *  District Court for the Eastern
                                    *  District of Missouri.

David Dormire, Superintendent JCCC,  *

                                    *

          Respondent - Appellee.    *

                                    *

_____

Submitted: June 12, 2003
Filed: August 14, 2003
_____

Before MELLOY, BEAM, and SMITH, Circuit Judges.
_____

MELLOY, Circuit Judge.

State prisoner Mark D. Whitehead appeals the district court's[1] denial of his petition for habeas corpus relief.  He alleges that his second degree murder conviction violated his Fourteenth Amendment due process rights because the evidence at trial was insufficient to prove that he acted "purposely" when he shot his girlfriend.  He also alleges violation of his Sixth Amendment right to effective assistance of counsel

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

based on defense counsel's failure to retain a firearms/crime scene reconstruction expert to support Whitehead's accidental shooting claim. The district court rejected Whitehead's claims under the deferential standards of 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1218. We affirm.

I.

Following a jury trial in the Circuit Court of the County of St. Louis, Missouri, Mark D. Whitehead was convicted of one count of murder in the second degree, Mo. Stat. Ann. § 565.021, and one count of armed criminal action, Mo. Stat. Ann. § 571.015. The trial court sentenced Whitehead to thirty years on each count, to be served concurrently. Whitehead appealed his conviction and sentence, claiming that the evidence was insufficient to support a jury finding that he purposely shot his girlfriend.[2] The Missouri Court of Appeals denied relief in an unpublished summary ruling dated February 18, 1997. Missouri v. Whitehead, 938 S.W.2d 666 (Mo. Ct. App. 1997).

Whitehead also filed a motion in state court for post-conviction relief, arguing that his trial counsel was ineffective for failing to retain a firearms/crime reconstruction expert. The trial court denied Whitehead's motion. The Missouri Court of Appeals again denied relief in an unpublished opinion. Whitehead v.

___

[2] Under Missouri law, "[a] person commits the crime of murder in the second degree if he . . . [k]nowingly causes the death of another person or, *with the purpose of causing serious physical injury to another person*, causes the death of another person . . . ." Mo. Ann. Stat. § 565.021 (emphasis added). A person commits armed criminal action if he uses a dangerous instrument or deadly weapon in the course of committing a felony. Mo. Stat. Ann. § 571.015.

<u>Missouri</u>, 964 S.W.2d 465 (Mo. Ct. App. 1998).[3]  In a memorandum opinion accompanying its ruling, the court of appeals found the following facts:

> Movant lived with his girlfriend, Judy Rotkosky (Victim), in a small apartment in St. Louis County.  Victim's twin brother, Jack Rotkosky, and his girlfriend, Mary Beth Taylor, also lived in the apartment.  On January 25, 1995, Movant came home from work at approximately 3:00 a.m.  Jack Rotkosky and Taylor were already in bed in their bedroom.  Victim accused Movant of cheating and they discussed it for about one hour.  They eventually undressed and went to bed.  At this time, Victim asked Movant to go out and get some cigarettes, and Movant refused.  Finally, Victim got up, dressed and went to a nearby Citgo to purchase cigarettes.
>
> After Victim left, Movant got up and dressed.  He then retrieved his semiautoatic rifle from his closet and loaded three shells into it.  He chambered a round and held the rifle with his finger on the trigger.  When Victim returned, Movant shot her.  Taylor, in the next bedroom, was jolted from her sleep.  She heard Victim say, "Mark, I can't breathe."  Taylor jumped up and went to Victim's bedroom.  She opened the bedroom door and found Victim right by the door, holding onto her throat.  Movant was at the other end of the room, standing in front of the TV tray next to the wall by the bed, holding a rifle.  Victim walked out of the bedroom and fell to her knees in the living room.  Jack Rotkosky came out of his bedroom and saw Victim on the floor.  Movant told him that he shot her.  When Rotkosky asked him what he meant, Movant got in Rotkosky's face and angrily said, "I shot her, God damn it, I shot her."  When Movant went over to Victim, she pushed him away.  Victim later died from the gunshot wound to her neck.
>
> When the police arrived, Movant told Officer Biesiada that he was showing [Victim] the gun and it went off.  Biesiada secured the rifle,

---

[3] Whitehead's motion for rehearing and/or transfer to the Missouri Supreme Court was denied on April 20, 1998.

which was leaning against a pile of clothing across from the bed. The police also retrieved a spent rifle casing on the bed and a live round under the covers. Movant was arrested and advised of his rights. At trial, Detective Wild testified that he interviewed Movant at the police station the day of the shooting. Movant told Detective Wild that he loaded the rifle and chambered a round, planning to scare Victim. Movant said that he was standing at the foot of the bed between the door and bed, holding the rifle when Victim entered the room. He claimed Victim pushed him by putting both hands against his chest, knocked him off balance, and he fell backwards onto his buttocks at the foot of the bed. He said that Victim was at the foot of the bed when the gun accidentally discharged. At first, Movant consistently maintained that he was at the foot of the bed when the incident happened. However, when confronted with physical evidence of the crime, he later said he may have been confused about where he was standing.[4]

Movant's defense at trial was that he accidentally shot Victim. He testified that he loaded the rifle because he planned to scare Victim by telling her that he was going to kill himself. When Victim returned, she came into the bedroom. Movant testified at trial that when Victim came into the bedroom, he was standing directly in front of the bed at the foot of the bed toward the corner. He held the gun across his chest. When Movant told her [he] planned to kill himself, she came toward him, pushing him with both hands across the top of his chest. He fell onto the lower part of the bed and landed flat on his back and buttocks. The gun discharged. He immediately jumped up and grabbed Victim and helped her into the living room.

Memorandum Supplementing Order of Feb. 17, 1998, at 2-4.

After exhausting state remedies, Whitehead petitioned for federal habeas relief. The district court denied the petition but granted a certificate of appealability on Whitehead's sufficiency challenge and ineffective assistance claim.

---

[4] The physical evidence indicated that Whitehead was standing at the side of the bed at the time of the shooting.

## II.

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003); see also 28 U.S.C. § 2254. In the interests of finality and federalism,

> [t]he Antiterrorism and Effective Death Penalty Act (AEDPA) mandates that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)

Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Finally, a state court decision involves "an unreasonable determination of the facts in light of the evidence

-5-

presented in state court proceedings," 28 U.S.C. § 2254(d)(2), only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).

A.    Fourteenth Amendment due process

In his due process challenge, Whitehead asserts that no rational jury could have found that he acted "with the purpose of causing serious physical injury," as required for second degree murder, Mo. Stat. Ann. § 565.021. See Jackson v. Virginia, 443 U.S. 307, 320-21 (1979) (holding that sufficiency challenges are cognizable in a federal habeas proceeding). In Jackson, the Supreme Court clarified the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). "In applying this standard, '[t]he scope of our review . . . is extremely limited. . . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.'" Sexton v. Lemna, 278 F.3d 808, 814 (8th Cir. 2002) (quoting Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994)).

The district court found that Whitehead had not presented clear and convincing evidence to rebut the factual findings of the Missouri Court of Appeals, as set out in the post-conviction ruling,[5] nor had Whitehead proven the state-court decision contrary to, or an unreasonable application of, clearly established law. We agree.

_____

[5] On direct review, the Missouri Court of Appeals rejected Whitehead's sufficiency challenge in a summary ruling. On post-conviction review, the court of appeals issued a supplementing memorandum which included a thorough recitation of the facts.

The Missouri Court of Appeals' recitation of the facts accurately reflects the record, and demonstrates more than sufficient evidence to support a finding that Whitehead acted purposely when he shot his girlfriend. Whitehead points to portions of the record – most notably, his trial testimony – which support his version of events, but the jury was not required to credit that testimony when other evidence supported the state's case. See Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000) (rejecting sufficiency challenge on habeas review where trial included conflicting evidence because jury was entitled to make credibility determinations).

Viewing the evidence in the light most favorable to the prosecution and resolving all conflicting inferences in the state's favor, as directed by Jackson, we agree with the district court that a rational factfinder could have concluded that Whitehead acted "with purpose to cause serious physical injury," as required for second degree murder. See Mo. Stat. Ann. § 565.021. Accordingly, the district court properly concluded that Whitehead's due process challenge did not merit habeas relief.

B.     Sixth Amendment right to counsel

Whitehead contends that he was denied his constitutionally guaranteed right to the effective assistance of counsel when his trial lawyer failed to retain a firearms/crime scene expert to support Whitehead's accidental shooting claim. The Sixth Amendment right to effective counsel is clearly established. See Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court explained that a violation of that right has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient

performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, quoted in Williams, 529 U.S. at 390.  Although Strickland requires a showing of both deficient performance and prejudice, a court deciding an ineffective assistance claim need not address both components of the inquiry if the defendant makes an insufficient showing on one.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, . . . that course should be followed."  Id.  Ineffectiveness of counsel is a mixed question of law and fact and thus on habeas review a federal court is not bound by a state court's conclusion that counsel was effective.  See id. at 698.  However, "state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d)."  Id.

In this case, the Missouri Court of Appeals resolved Whitehead's Sixth Amendment claim on prejudice grounds.  After identifying Strickland as the governing precedent, the court of appeals held the following:

> Movant's claim is without merit.  Even assuming Movant's counsel fell below the standard of a reasonably competent attorney, Movant was not prejudiced.  At the evidentiary hearing, Movant presented the expert testimony of August Nilges, a forensic consultant.  Nilges reviewed all the evidence and interviewed Movant as part of his investigation.  He stated that Movant told him that he was standing on the side of the bed at the head of the bed.  He positioned Victim at the side of the bed between an ironing board and a chest of drawers.  Nilges admitted that the only time Movant had placed himself and Victim in these positions was in an interview with Nilges in September 1996.  Nilges further admitted these positions are not consistent with Movant's testimony at trial or his statements to the police.  Nilges testified it was not possible for Victim to have been shot if she were standing in the doorway or at

-8-

the foot of the bed when she pushed Movant and Movant was standing at the foot of the bed.

Nilges' testimony would not have assisted Movant's defense at trial. Nilges admitted that Movant's version of the incident as stated at trial was inconsistent with the physical evidence. Indeed, he stated it was impossible for the events to have occurred that way. Therefore, Nilges' testimony could possibly have harmed Movant's defense. In addition, the testimony of Nilges was consistent with the State's argument.

Memorandum Supplementing Order of Feb. 17, 1998, at 4-5.

On habeas review, the district court found the Missouri appellate court's finding of no prejudice fully supported by the record and consistent with federal law. On appeal, Whitehead argues that close review of the record demonstrates inaccurate, unreasonable factual determinations by the state court. He contends that, although "somewhat confusing," the record as a whole shows no inconsistencies between his trial testimony regarding his position at the time of the shooting and that told to Nilges, his post-conviction expert, and that Nilges' testimony, bolstering his own, would have resulted in reasonable doubt as to whether he shot Rotkosky on purpose.

In response, the government points to specific evidence in the record that corroborates the state court's factual determinations on these issues. At trial, Whitehead testified that he was standing at the foot of the bed:

Q. [trial counsel] So you were–
A. [Whitehead] In front of it on the corner, right in front.
Q. So you were indicating you were standing at the foot of the bed toward the corner of the bed; is that correct?
A. Yes. Yes.

Trial transcript, vol. II at 347.[6]  At the post-conviction evidentiary hearing, Nilges expressly testified that Whitehead placed himself close to the head of the bed:

> Q. [prosecutor] Now, when you interviewed with Mr. Whitehead where did he tell you that he believed he was?
> A. [Nilges] His statement was that, as I recall it, was that he was standing along side of the waterbed facing the outside door.
> Q. I believe in your report you indicate that [Whitehead] positioned himself in the area just past the chest of drawers. . . .
> A. Yes, ma'am, toward the head of the bed.
> Q. Toward the head of the bed.  So past the chest of drawers then?
> A. Yes, ma'am.
> Q. Side of the chest of drawers closest to the head of the bed?
> A. Yes, ma'am.

Post-conviction hearing transcript, vol. I, at 20.

Whitehead has not presented clear and convincing evidence to refute the state court's presumptively correct factual findings, see 28 U.S.C. § 2254(e)(1), and he has not demonstrated that the state court's determination of facts was unreasonable, see 28 U.S.C. 2254(d)(2).  Given its reasonable findings, the state court's conclusion that Nilges' testimony would not have helped Whitehead at trial and may have harmed

---

[6] On cross-examination, Whitehead again placed himself at the foot of the bed when Rotkosky entered the room:

> Q. [prosecutor] [D]id you hear Judy come in?
> A. [Whitehead] Yeah.
> Q. Where did you go?
> A. Stood at the foot of the bed.

Trial transcript, vol. II at 365.

him is supported by the record. Whitehead appears to argue that the record can also support an inference that his version of the incident has remained consistent, or, alternatively, that seemingly inconsistent testimony would have been disregarded by the jury because it stemmed from understandable confusion about his precise position at the time of the shooting. We do not believe that Whitehead has made such a showing, but, regardless, he has not shown that the state court's determinations to the contrary were unreasonable. See Boyd v. Minnesota, 274 F.3d 497, 501 n.4 (8th Cir. 2001) ("There is sufficient record evidence to support such a finding and, thus, it would not constitute an unreasonable determination of the facts in light of the evidence presented at trial."). Whitehead has thus failed to demonstrate a reasonable probability that, but for defense counsel's failure to retain an expert, the result of the trial would have been different. See Strickland. 466 U.S. at 693-94. Accordingly, the district court properly concluded that the Missouri court's treatment of Whitehead's Sixth Amendment claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## III.

For the foregoing reasons, we affirm the ruling of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-