# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1714

_____

Robert Osborne,                *
                                *
            Appellant,         *
                                *    Appeal from the United States
      v.                          *    District Court for the
                                *    Western District of Missouri.
James D. Purkett, Superintendent,    *
Eastern Missouri Correctional Center,   *
                                *
            Appellee.          *

_____

Submitted: March 14, 2005
Filed: June 21, 2005 **(Corrected 6/27/05)**

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and GRUENDER, Circuit
Judges.

_____

BOWMAN, Circuit Judge.

Robert Osborne was convicted of rape following a jury trial in Missouri state court. His conviction and the denial of his motion for post-trial relief were upheld by the Missouri Court of Appeals. Osborne then filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000). The District Court[1] denied the petition without a hearing, and Osborne now appeals. We affirm.

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

I.

Osborne was tried in the Circuit Court of Buchanan County on May 5–7, 1998. The state's principal witness was seventeen-year-old R.S., Osborne's second cousin. R.S. testified that on July 21, 1994, when she was thirteen years old, Osborne raped her in her home. That evening, after other family members had gone to bed, R.S. went into the living room where Osborne was watching television and laid herself down on the couch. Osborne went to the couch and raped her. The next morning, Osborne told R.S. that he was sorry for raping her and that he had been drinking at the time.

R.S. testified that the rape was not the only time that Osborne sexually assaulted her. On at least two earlier occasions, Osborne lay beside her and masturbated against her. On an occasion following the rape, Osborne attempted to sodomize her while she was doing laundry in the basement of the house. Osborne approached R.S. from behind, took down her pants, and attempted to insert his penis into her anus. When he was unable to do so, Osborne told her that he "needed to loosen [her] up" and inserted a broom stick into her anus. Trial Tr. at 239. When R.S. began to cry, Osborne did not proceed with the act.

R.S. reported the rape in February 1997. On March 13, 1997, Robin Murphy, a nurse practitioner, performed a Sexual Abuse Forensic Examination (SAFE examination) of R.S. Murphy testified that she found scarring on R.S.'s hymen and a rolled edge on R.S.'s posterior fourchet, the tissue below the hymen. According to Murphy, these findings are consistent with R.S. having had sexual intercourse.

The jury convicted Osborne of rape on May 7, 1998. The Missouri Court of Appeals affirmed the conviction. Osborne sought post-conviction relief under Missouri Supreme Court Rule 29.15. The Circuit Court of Buchanan County denied Osborne's motion, and the Missouri Court of Appeals affirmed. Osborne v. State, 80

S.W.3d 538 (Mo. Ct. App. 2002). Osborne then filed his petition for writ of habeas corpus in federal court, which the District Court denied. This appeal followed.

## II.

A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254 (2000).[2] In the interests of finality and federalism, however, federal courts are constrained by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) to exercise only a "limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir.), cert. denied, 540 U.S. 1059 (2003). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1) (2000).

A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405–06 (2000). A state-court decision is an "unreasonable application of" clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407–08. As noted by the Supreme Court, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law *erroneously* or *incorrectly*." Id. at 411 (emphasis added).

---

[2]Before doing so, however, the prisoner must exhaust his state remedies. Coleman v. Thompson, 501 U.S. 722, 731 (1991).

"Rather, that application must also be *unreasonable*." Id. (emphasis added). In other words, a federal court may not grant the petition unless the state-court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent. James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999), cert. denied, 528 U.S. 1143 (2000).

When a district court denies a habeas petition, we review the district court's factual findings for clear error and its legal conclusions de novo. Johnston v. Luebbers, 288 F.3d 1048, 1051 (8th Cir. 2002), cert. denied, 537 U.S. 1166 (2003).

III.

Pursuant to the certificate of appealability issued by the District Court, Osborne raises four issues on appeal: (1) whether the District Court erred in denying Osborne's request for an evidentiary hearing, (2) whether the District Court erred in denying habeas corpus relief based on the trial court's admission of evidence of other sexual offenses committed by Osborne against R.S., (3) whether the District Court erred in denying habeas corpus relief based on Osborne's claim that his trial counsel was ineffective for failing to impeach a state witness, (4) whether the District Court erred in denying habeas corpus relief based on Osborne's claim that his trial counsel was ineffective for failing to investigate other acts involving the penetration of R.S. by someone other than Osborne. We address each of these issues in turn, mindful of the standards discussed above.

A.

First, Osborne argues that the District Court erred by not granting him an evidentiary hearing to develop a factual record that Todd Shalz, R.S.'s boyfriend, had engaged in sexual intercourse with R.S. before the SAFE examination was performed. Osborne sought to introduce an affidavit in the District Court from Shalz stating the

same.[3] Osborne asserts that, with this fact, he intended to show that the scarring found during the physical examination of R.S. was just as likely caused by Shalz as by Osborne.

We review the District Court's decision denying the evidentiary hearing for abuse of discretion. Smith v. Bowersox, 311 F.3d 915, 921 (8th Cir. 2002), cert. denied, 540 U.S. 893 (2003). Initially, we note that the District Court's discretion to grant the hearing was constrained by AEDPA.[4] Pursuant to the statute, when a habeas petitioner "has failed to develop the factual basis of a claim" in the state courts, the federal district court *may not* hold an evidentiary hearing *unless* the applicant shows that the claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence" *and* that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2) (2000).[5] A failure to develop the factual basis of a claim in state-court proceedings is established, and the restrictions of § 2254(e)(2) apply, when "there is a lack of diligence, or some greater fault,

---

[3]The parties have not provided us with a copy of the Shalz affidavit. This is just one example of the multiple documents to which the parties cite but have not arranged to place before us to assist in our review. As a result of this shirking of responsibility, the Court was forced to expend substantial resources to independently procure all relevant documents and, in doing so, was forced to delay the issuance of this opinion. The parties are advised to review their responsibilities for compiling the record on appeal set out in Fed. R. App. P. 11(a), Fed. R. App. P. 30, and 8th Cir. R. 10A.

[4]We therefore find the pre-AEDPA law cited by Osborne to be of limited usefulness.

[5]An evidentiary hearing may also be held in some cases involving previously unavailable rules of constitutional law, 28 U.S.C. § 2254(e)(2)(A)(i) (2000), but such a situation is not presented here.

attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000). Diligence requires, "at a minimum," that the petitioner "seek an evidentiary hearing in state court in the manner prescribed by state law." Id. at 437.

Osborne concedes that he did not present evidence in the state-court proceedings showing that Shalz and R.S. engaged in sexual intercourse. He argues that Shalz did not come forward with this fact until September 25, 2003, after the state-court proceedings had terminated. As the District Court noted, however, neither Osborne nor his attorneys exercised diligence in attempting to discover this fact at the time of the state-court proceedings. Prior to trial, R.S. revealed in her deposition that she had a sexual relationship with Shalz that involved digital vaginal penetration. This testimony put Osborne's attorneys on notice of R.S.'s relationship with Shalz and its possible materiality. The sole indication that counsel made some effort to investigate the relationship was the trial attorney's testimony at the Rule 29.15 hearing that she asked Shalz whether he had intercourse with R.S. and Shalz replied that he could not recall. Given knowledge of the sexual nature of the relationship and its potential importance, a diligent attorney would have done more. At the very least, Osborne's attorneys in the state-court proceedings should have conducted a follow-up interview with Shalz to fully investigate his relationship with R.S. Neither Osborne nor his attorneys "made a reasonable attempt, in light of the information available at the time, to investigate and pursue [the issue] in state court." Id. at 435.

Because Osborne "failed to develop" in the state proceedings the fact that he seeks to establish on federal habeas review, the District Court was barred from granting an evidentiary hearing absent Osborne's compliance with the balance of § 2254(e)(2)'s stringent requirements. The District Court did not abuse its discretion in concluding that Osborne did not meet even the first requirement—that of demonstrating that the fact could not have been discovered through the exercise of due diligence. Had Osborne or his attorneys diligently pursued the issue, the fact of penetration of R.S. by one other than Osborne could have been discovered. While

Osborne argues that Shalz was vague when asked by Osborne's trial attorney whether he and R.S. had sexual intercourse, Osborne has made no showing that Shalz would have concealed the fact if counsel had asked a follow-up question or if the issue had been pursued further. There is no indication that Shalz was intentionally withholding evidence. Indeed, Shalz came forward with the fact in his affidavit.

Our resolution of the first § 2254(e)(2) requirement makes it unnecessary for us to reach the second § 2254(e)(2) requirement. We note, however, that Osborne has not demonstrated that sexual intercourse between Shalz and R.S., if proven, would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would have found Osborne guilty of rape.

The District Court did not abuse its discretion in denying Osborne's request for an evidentiary hearing.

B.

Second, Osborne argues that the District Court erred in concluding that Osborne's due-process rights were not violated when the state trial court admitted evidence of sexual contact between Osborne and R.S. for which Osborne was not charged. Specifically, Osborne argues that R.S.'s testimony about the attempted sodomy and broom incident was inadmissable under Missouri law and was highly prejudicial because it inflamed the passions of the jury.

Whether evidence of the subsequent assault was admissible is a question of state law. Clark v. Groose, 16 F.3d 960, 963 (8th Cir.), cert. denied, 513 U.S. 834 (1994). We do not review whether this evidence was properly admitted pursuant to state law, as we are prohibited from reviewing matters of state evidentiary law that have been decided by a state court. Id. Our review is limited to determining whether Osborne's federal due-process rights were violated. Mercer v. Armontrout, 844 F.2d

-7-

582, 587 (8th Cir.), cert. denied, 488 U.S. 900 (1988). "A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996), cert. denied, 520 U.S. 1171 (1997).

We hold that Osborne has failed to establish a due-process violation. The Missouri Court of Appeals recognized that evidence of uncharged crimes or wrongs is inadmissible to show the propensity of the defendant to commit the charge for which he is on trial. On the other hand, the court noted that evidence of uncharged crimes is relevant and admissible to establish motive, intent, the absence of mistake, a common scheme or plan, or identity, so long as the evidence's probative value outweighs its potential prejudicial effect. This standard for admissibility is the same as that used in the federal courts and is in accord with Supreme Court precedent. See Fed. R. Evid. 403, 404(b); Huddleston v. United States, 485 U.S. 681, 685–88 (1988). The Missouri Court of Appeals held that R.S.'s testimony regarding the subsequent assault was used to show Osborne's motive (that of sexual desire for R.S.), to show that Osborne's pattern of behavior towards R.S. was not likely to stop, and to rebut Osborne's excuse to R.S. the day after the rape that his inebriation caused the rape. The District Court questioned the state court's first two conclusions, but found R.S.'s testimony "relevant to rebut Petitioner's suggestion that he was too drunk to know what he was doing." Order dated Jan. 22, 2004 at 13 (denying Osborne's petition for writ of habeas corpus). We agree. The evidence of Osborne's subsequent sexual assault of R.S. was admitted for a purpose other than simply showing Osborne's propensity to commit rape. The state courts did not unreasonably apply Supreme Court precedent and, in light of testimony that Osborne raped R.S. when she was thirteen years old and masturbated against her at an even earlier age, the testimony about the sodomy was not sufficiently prejudicial to fatally infect the trial. Nothing in the record indicates that the trial was so fundamentally unfair as to deprive Osborne of his due-process rights.

## C.

Third, Osborne asserts that his Sixth Amendment right to effective representation was violated because his trial attorney failed to impeach a state witness based on the witness's prior inconsistent statement. The witness, Michelle Nell, met Osborne when he came to the bar where she worked shortly before the trial began. At trial, Nell testified that Osborne told her that he had raped his niece. But prior to trial, according to Osborne, Nell informed an investigator for the public defender service that Osborne told her that he was *accused* of raping his niece. This difference, argues Osborne, was an inconsistency that his counsel should have raised.

To establish a claim of ineffective assistance of counsel, Osborne must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, under the "performance" component, Osborne must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. In considering whether this showing is met, our scrutiny of counsel's performance is "highly deferential," and we presume that counsel's conduct "falls within the wide range of reasonable professional assistance." Id. at 689. We do not "second-guess strategic decisions or exploit the benefits of hindsight." Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997), cert. denied, 522 U.S. 1129 (1998). Second, under the "prejudice" component, Osborne must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The Missouri Court of Appeals, applying the performance and prejudice standards, held that Osborne failed to prove ineffective assistance of counsel. The court found that defense counsel exercised professional judgment and a reasonable trial strategy in deciding not to call the investigator to impeach Nell's testimony. The

court noted that because the investigator worked for defense counsel, she "would not likely be viewed as persuasive and could even impair the defense team's credibility with the jury." Resp't Ex. M at 10. Osborne argues that Nell, not the investigator, is the interested witness because Nell's boss is married to a person who works in the prosecutor's office. We cannot say that the Missouri Court of Appeal's finding is unreasonable. We agree that defense counsel's decision not to raise Nell's statement to the investigator was trial strategy entitled to substantial deference. See Strickland, 466 U.S. at 690 (noting that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Any slight weight the jury might have given to the fact that Nell's boss (but not Nell herself) was in a relationship with someone in the prosecutor's office (but not the prosecutor trying the case) would not have diminished the potentially negative effect that calling the public defender service investigator might have had.[6] The decision by Osborne's counsel certainly falls within the wide-range of reasonable representation guaranteed by the Sixth Amendment.

Because Osborne did not satisfy the performance test, we need not consider the prejudice test. We note, however, that the Missouri Court of Appeals found that Osborne likely would have been convicted of rape even absent Nell's testimony, given the strength of the testimony of R.S., her sister, and the SAFE examiner. Thus, Osborne has not met his burden of showing that, but for his counsel's failure to impeach Nell, he would not have been found guilty. The ruling of the state court did not involve an unreasonable application of federal law. The District Court did not err when it denied this claim.

---

[6]At trial, Nell testified that her boss was dating an employee in the prosecutor's office. The jury was free to consider this fact in assessing Nell's credibility.

D.

Finally, Osborne argues that he was deprived of effective assistance of counsel because his trial attorney did not fully investigate other instances of vaginal penetration that could have caused the scarring of R.S. identified by the SAFE examination. Specifically, Osborne asserts that, had counsel acted with reasonable professional competence, she would have discovered during the time of the state proceedings the fact that Shalz and R.S. engaged in sexual intercourse prior to the SAFE examination. Indeed, we concluded above that Osborne's attorney was not diligent in investigating the extent of R.S.'s relationship with Shalz. This conclusion very well may have led us to find the performance test of Strickland satisfied. We reach no decision on this matter, however, because it is procedurally defaulted.

"[A] habeas petitioner must have raised both the factual and legal bases for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal review." Flieger v. Delo, 16 F.3d 878, 885 (8th Cir.), cert. denied, 513 U.S. 946 (1994). Although Osborne raised this failure-to-investigate claim in his Rule 29.15 motion to the state trial court, he did not include this specific ineffectiveness claim in his appeal to the Missouri Court of Appeals.[7] This claim is

---

[7]In his Rule 29.15 motion, Osborne raised two ineffective-assistance claims related to the issue of R.S.'s prior sexual activity:

1. "Trial counsel was ineffective for failing to investigate and present to the court/jury the complaining witness's prior sexual activity." Resp't Ex. J at 28.

2. "Trial counsel was ineffective for failing to adequately cross-examine the complaining witness regarding her prior experiences in prosecuting sexual assault cases." Id. at 29.

On appeal of the denial of his Rule 29.15 motion, however, Osborne raised only the second of these claims: "[T]rial counsel failed to cross-examine the

-11-

now procedurally barred. See id.; Lowe-Bey v. Groose, 28 F.3d 816, 818 (8th Cir.), cert. denied, 513 U.S. 1061 (1994). We may reach the merits of a procedurally barred claim only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Osborne asserts that the "cause" of his procedural defect was "Shalz's unwillingness to cooperate during the criminal and post-conviction proceedings. The evidence regarding Shalz was not available during the post-conviction proceeding." Reply Br. of Appellant at 8. This argument fails on many levels. First, nothing in the record indicates that Shalz would have lied about his sexual relationship with R.S. had the issue been pursued. Second, Osborne's ineffective-assistance claim is *premised* on the notion that Shalz *would have admitted* having intercourse with R.S. had Osborne's trial counsel properly investigated the issue. Were we to accept his procedural default "cause" argument that Shalz was unwilling to cooperate, we would be forced to deny his ineffective-assistance argument on its merits. Third, Osborne raised counsel's failure to investigate R.S.'s prior sexual history in his Rule 29.15 motion, thus indicating that the issue was ripe to be brought forward in his appeal of that motion. Accordingly, we find no cause for Osborne's procedural default. Because Osborne has failed to provide cause for his default, we need not address the issue of prejudice. See Lowe-Bey, 28 F.3d at 820.

---

complaining witness regarding her previous experience in prosecuting a sexual assault case." Resp't Ex. K at 10. This was insufficient to preserve the related, but different, ineffective-assistance claim based on counsel's failure to investigate. See Flieger, 16 F.3d at 885 ("Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness claims properly presented all conceivable specific variations for purposes of federal habeas review.").

Osborne also attempts to get past the procedural bar by arguing that Shalz's affidavit presents new evidence that would have led to his acquittal had it been presented at trial. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986). The requirements to establish the requisite probability of innocence are high. Osborne must first come forward with "new" evidence, Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir.), cert. denied, 534 U.S. 963 (2001), and then he must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995).[8] Evidence is only "new" if it was "not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine, 238 F.3d at 1029. As discussed above, evidence that R.S. had sexual intercourse with Shalz is not new—it existed at the time of trial and could have been discovered earlier had Osborne or his counsel diligently pursued it. Even assuming Shalz's testimony was new evidence, Osborne did not show the required likelihood that reasonable jurors would not have convicted him based on the other evidence presented at trial. Because Osborne has presented no new evidence that would establish his innocence, the merits of his procedurally barred claim cannot be considered.

---

[8]Citing Sawyer v. Whitley, 505 U.S. 333, 336 (1992), the District Court stated that Osborne was required to demonstrate his innocence by presenting clear and convincing evidence that no reasonable juror would have convicted him in light of newly discovered evidence. The District Court erred in applying the Sawyer "clear and convincing" standard to determine whether Osborne's procedurally defaulted claim could be heard. See Schlup, 513 U.S. at 315, 323–32 (holding that the "more likely than not" standard should be applied when the claim of innocence does not by itself provide a basis for relief, but instead provides a gateway through which a habeas petitioner may pass to have his otherwise-barred claim considered on the merits); Cornell v. Nix, 119 F.3d 1329, 1332, (8th Cir. 1997) (same). We review Osborne's claim under the "more likely than not" standard set forth in Schlup .

IV.

The denial of Osborne's habeas petition is affirmed.[9]

_____

<hr>

[9]The Court has accepted for filing Osborne's pro se addendum to the oral argument. The contents of this addendum do not cause us to change the reasoning or the holding of our opinion.