**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0780n.06
Filed: December 23, 2008

**No. 04-2075**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DAVID E. CONNOLLY,

     Petitioner-Appellant,

v.

CAROL HOWES,

     Respondent-Appellee.

                             /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

BEFORE:    BATCHELDER, CLAY and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner David E. Connolly ("Connolly") appeals the district court's order dismissing his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 for failure to comply with the statute of limitations. On appeal, Connolly argues that he is entitled to equitable tolling because of actual innocence. For the reasons that follow, this Court **AFFIRMS** the district court and dismisses Connolly's petition.

**BACKGROUND**

**I. Investigation of Alleged Abuse**

In May 1992, Connolly and Linda Stiles ("Stiles") lived in Grand Rapids, Michigan with their son and three daughters. On May 22, 1992, during a routine pre-school assessment interview, a school readiness counselor asked one of Connolly's daughters, who was four years old, what her

father does. The girl answered, "[h]e gets up in the middle of the night." The counselor asked, "[t]o go to work?" The girl responded no, and when asked again what her father does, she said, "[p]uts his middle finger in my butt." (J.A. at 48) When asked if her father hurt her, she nodded. The counselor reported the girl's statements to the Kent County Office of Child Protective Services ("Protective Services"). Debra Benner ("Benner") investigated the matter for Protective Services, and Christine Karpowicz ("Karpowicz"), an officer with the Grand Rapids Police Department, investigated as well.

Upon learning that the girl was scheduled for a pre-kindergarten medical examination, Benner asked the girl's physician to give her a gynecological exam. The exam took place on June 8, 1992. The physician reported that the girl had a one to two millimeter tear in her anus, and that while the tear was consistent with sexual abuse, it could also have resulted from other causes, including constipation. Stiles did not view the exam as corroborating the girl's allegation, because the doctor estimated that the tear was only two to three days old, and Stiles had kept Connolly away from the children since the allegations first surfaced on May 22.

Benner interviewed the girl, who told Benner that "Daddy comes in bedroom" and "[d]oes something naughty," and, when asked if it was good or bad when her father hugged her, she said, "bad." (J.A. at 49) Benner also interviewed the girl's six-year-old brother, who said that "there was no way" his sister's allegation was true. (J.A. at 49) On June 8, 1992, Benner interviewed Stiles, who told Benner that Connolly had been accused in 1983 of sexually abusing a four-year-old. Stiles also told Benner that "if anyone sexually abused the kids, it would have to be their father," since he was the only one that ever watched them besides her. (J.A. at 50)

2

Benner then interviewed Connolly, who told her that he had been in prison fourteen years earlier for attempting to rape a twenty-year old girl in 1978. Connolly said that he attempted to rape the twenty-year-old because he was on drugs at the time. Connolly acknowledged the child molestation accusation from 1983 and volunteered that he had actually been accused of molesting two four-year-olds at the time, but said that he had passed polygraph tests with respect to both incidents. He also volunteered that he had twice beaten Stiles, but that he was not aware he had done so until the following mornings and attributed his lack of awareness to alcohol. Connolly told Benner he was scheduled to take a polygraph test on July 9, 1992 in regard to his daughter's allegation.

Benner learned from Karpowicz that the polygraph test Connolly took on July 9, 1992 was inconclusive. Karpowicz also told Benner that Connolly had not passed either of the polygraph tests he took in 1983 with regard to the earlier sexual abuse allegations. Benner asked Karpowicz for documentation of the tests, but never received any.

In January 1993, Benner wrote a report detailing her investigation, in which she concluded that she could not substantiate the alleged sexual abuse. She consequently closed Protective Services' investigation into the matter. In October 1993, Karpowicz submitted to the prosecutor's office her police report from her own investigation into the allegation. On November 11, 1993, Karpowicz requested that Protective Services re-open its investigation into the case. A different investigator at Protective Services concluded his investigation in January 1994, finding contradictions between Benner's findings and Karpowicz' police report.

## II. Connolly's Legal Proceedings[1]

On October 28, 1993, Connolly was arrested and charged with first-degree criminal sexual conduct in Kent County Circuit Court. On November 9, 1993, Connolly appeared before the circuit court for a preliminary examination, during which his daughter repeated her allegation that her father had inserted his middle finger in her anus. On April 12, 1994, the circuit court conducted another pre-trial hearing, with the prosecutor and defense counsel both present. At the April 12 hearing, Benner testified that she did not believe Connolly's daughter had been sexually abused, and defense counsel was handed a copy of Benner's January 1993 report.

On June 21, 1994, the morning of trial, the circuit court delayed ruling on two motions *in limine*: one concerning proposed prosecution witnesses who would testify about Connolly's prior attempted rape in 1978 and alleged molestations of two four-year-olds in 1983; and one concerning whether the prosecution could bring up Connolly's alleged drug and alcohol abuse. However, because the prosecutor referred to Connolly doing "harmful things when he drinks alcohol" in her opening statement later that day, the court granted Connolly's motion for a mistrial.

Connolly's trial was rescheduled for June 27, 1994, and on that day, the case was reassigned to another circuit judge, Judge Dennis C. Kolenda, for immediate jury selection. Connolly appeared before Judge Kolenda that day with newly appointed counsel, and at that time informed the court of his intent to enter a no contest plea. Connolly's appointed counsel now asserts that he advised

---

[1]Connolly moves to enlarge the record to provide background into his legal proceedings prior to his plea. This Court denies his motion, because the additional information would not affect the outcome of Connolly's appeal. Nevertheless, this Court recounts herein the additional facts Connolly alleges to help clarify his actual innocence claim.

Connolly to plead largely because he believed the trial judge would have allowed the victims of Connolly's alleged prior sexual abuse to testify at trial.[2]  At the plea hearing, when Judge Kolenda asked Connolly if he was prepared to plead, Connolly responded, "in view of circumstances beyond my control, I will plead no contest.  However, I want to state on the record that I am not guilty." (J.A. at 65-66)  Judge Kolenda asked Connolly if he understood the charges, and that a plea of no contest would mean a conviction and a sentence of five to twenty years of imprisonment, as per the plea agreement.  Connolly responded that he understood.  Connolly's counsel informed the court that Connolly's reason for pleading was that drugs or alcohol impaired his memory of the event.

On the day of his sentencing, Connolly moved to withdraw his no contest plea.  Judge Kolenda denied the motion and sentenced Connolly to five to twenty years of imprisonment, a sentence that Connolly is still serving.

## III.  Post-Conviction History

Connolly appealed his conviction to the Michigan Court of Appeals, which denied Connolly's appeal, and on August 30, 1996, the Michigan Supreme Court denied his application for leave to appeal.  Connolly did not seek to appeal to the United States Supreme Court, and the ninety-day appeal period to do so expired on November 28, 1996.  On April 2, 1997, Connolly filed a petition for a writ of habeas corpus in the Western District of Michigan.  On January 6, 1998, the district court dismissed Connolly's petition for failure to exhaust.  Connolly finally filed a motion for collateral relief in Kent County Circuit Court on October 2, 2002, a motion that the circuit court denied on

---

[2]Apparently, another judge was expected to preside over the trial itself.  *Appellant's Br.* at 12-13 n.4.

October 14, 2002. The Michigan Supreme Court denied him leave to appeal the denial of collateral relief on October 31, 2003.

Beginning shortly after he was sentenced, Connolly tried on several occasions to obtain a transcript from the April 12, 1994 hearing at which Benner stated her belief that he was innocent. Connolly was repeatedly informed, first by court reporters and then by Judge Kolenda, that because there was no record on the docket sheet of the April 12 hearing, the hearing must not have taken place. By order dated May 25, 2000, Judge Kolenda acknowledged that the hearing did in fact take place and that a transcript was available.

Connolly filed this petition for habeas relief in the Western District of Michigan on April 8, 2004. In his petition, Connolly raised four claims: (1) that his plea was not made knowingly, because it was induced by fraud and coercion; (2) that Karpowicz falsified information to secure a warrant; (3) that he received ineffective assistance of counsel; and (4) that the ineffective assistance of counsel "causing a due process violation due to missing transcripts." (J.A. at 10-11) On August 5, 2004, the district court dismissed Connolly's habeas petition as time-barred and denied Connolly a certificate of appealability. On August 3, 2005, this Court granted a rehearing and a certificate of appealability with respect to the limited question of whether the statute of limitations was equitably tolled in Connolly's case due to his actual innocence.

**DISCUSSION**

**I. Standard of Review**

"The dismissal of a habeas petition by the district court as barred by 28 U.S.C. § 2244's statute of limitations is reviewed *de novo*." *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002).

## II. Equitable Tolling

Federal habeas petitioners in custody pursuant to a judgment in a state court must file their petitions within one year of the date judgment becomes final on direct review or the time to seek such review expires, unless circumstances not relevant here exist. 28 U.S.C. § 2244(d)(1)(A). Connolly's one-year limitations period to seek habeas relief began on November 28, 1996, when his time to appeal his conviction to the United States Supreme Court expired. Although Connolly filed a federal habeas petition on April 2, 1997, a federal habeas petition does not toll the limitations period. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). The limitations period therefore expired on November 27, 1997, and Connolly did not file this habeas petition until April 8, 2004.

"Because [the] one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2001). "[E]quitable tolling of the one-year limitations period based on a credible showing of actual innocence is appropriate." *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005). However, "[t]his Circuit has repeatedly cautioned that equitable tolling relief should only be granted sparingly." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). "'[A]ctual innocence means factual innocence, not mere legal insufficiency.'" *Souter*, 395 F.3d at 590 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). "The petitioner bears the burden of demonstrating that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). A petitioner may claim actual innocence for the purposes of equitable tolling, even if his conviction was the result of a plea. *Bousley*, 523 U.S. at 623; *see also Waucaush v. United*

*States*, 380 F.3d 251, 258 (6th Cir. 2004) (finding petitioner actually innocent of charge to which he pled guilty).

However, "[w]ithout any new evidence of innocence, even a concededly meritorious constitutional violation is not in itself sufficient" to reach the merits of a time-barred claim. *Schlup v. Delo*, 513 U.S. at 298, 316 (1995). Therefore, to demonstrate the actual innocence that would allow a court to consider a time-barred constitutional claim, a habeas petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Id.* The petitioner's evidence must include "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlu*p, 513 U.S. at 324. Although the examples of new evidence cited in *Schlup* "were not meant to be an exhaustive list of everything upon which an actual innocence claim may be based," *Souter*, 395 F.3d at 595 n.8, "the *Schlup* standard is demanding and permits review only in the 'extraordinary' case," *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). A court presented with new evidence must consider it in light of "'all the evidence,' old and new, incriminating and exculpatory,' without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House*, 547 U.S. at 538 (citation omitted). After viewing all of the evidence, if "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," the petitioner's gateway claim of actual innocence is granted. *Schlup,* 513 U.S. at 327.

Connolly's evidence in support of his claim of actual innocence includes: (1) Benner's January 1993 investigative report, in which she concluded that the girl's allegations were unsubstantiated; (2) Benner's testimony at the April 12, 1994 hearing in which she stated her conclusion that the girl had never been abused; and (3) Protective Services' January 1994 report, in which its investigator notes contradictions between Karpowicz' police report and Benner's investigative report. Because all of this evidence was available to Connolly when he pled on June 27, 1994 and would have been available to him at trial, none of it is "new." *See Souter*, 395 F.3d at 590.

Connolly argues that Benner's testimony at the April 12, 1994 hearing should be considered "new" evidence because it never appeared on the trial court's docket sheet and no transcript of the hearing was obtainable until 2000. However, there is no evidence that the hearing took place outside Connolly's presence, and Connolly's counsel was certainly present. Accordingly, the substance of Benner's testimony was available to Connolly from the moment she gave it at the hearing. Further, Connolly's counsel was handed a copy of Benner's January 1993 report detailing her investigation and containing all of the facts to which Benner could have testified at the hearing. While the examples of new evidence cited in *Schlup* "were not meant to be an exhaustive list," *Souter*, 395 F.3d at 593 n.8, Connolly offers no authority for finding that a long-lost transcript of an evidentiary hearing that he presumably attended could constitute such evidence. Because Connolly has not presented any new evidence, his claim of actual innocence must fail. *See Souter*, 395 F.3d at 590.

Even if this Court were to consider all of the purportedly exculpatory evidence Connolly presents on this appeal, this Court still would not be able to conclude that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *See Schlup,*

513 U.S. at 327. Because Connolly is claiming actual innocence after having entered a no-contest plea, this Court considers "any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy[.]" *Bousley*, 523 U.S. at 624. This Court looks not just at the facts to which Connolly admitted when he pled, but also at "any other evidence of his guilt that the Government has marshaled." *Waucaush*, 380 F.3d at 255. Connolly's evidence essentially boils down to Benner's testimony that she was unable to substantiate the allegation and possible testimony from the second investigator at Protective Services that Karpowicz' findings were questionable. While the extent of the government's evidence is unclear from the record, the government could have offered Karpowicz' testimony detailing her own investigation. More importantly, the government could have called the alleged victim, who had already testified at a preliminary examination that Connolly had abused her. Stiles could also have testified that Connolly was the only person who "watched" his daughter and had the opportunity to molest her.

Moreover, if the testimony of the victims of Connolly's alleged prior sexual assaults were admissible, such evidence would have been extremely damaging to Connolly; one of the witnesses would have testified that Connolly molested her when she was the same age as Connolly's daughter. Connolly's counsel believed the trial judge would have permitted the testimony. While such evidence probably would not have been admissible pursuant to M.R.E. 404(b), this Court cannot say definitively that the state trial would not, or should not, have exercised its discretion to admit the testimony, without knowing the details of the proposed testimony.[3]

_____

[3]Under M.R.E. 404(b), evidence of prior bad acts may be admissible to show "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes,

Regardless, because the case would have turned on the credibility of the respective parties' witnesses, this Court cannot find it likely that no reasonable juror would have found Connolly guilty. In sum, not only does the evidence Connolly offers on this appeal fail to constitute "new reliable evidence," but it also is not "so strong that a court cannot have confidence in the outcome" of the plea. *See Schlup,* 513 U.S. at 316. Accordingly, the statute of limitations cannot be equitably tolled.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is **AFFIRMED** and the petition is dismissed.

---

wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." However, "where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing intent." *People v. Sabin*, 614 N.W.2d 888, 899 (Mich. 2000) (quotations and citations omitted). Determining whether such evidence should be considered here exemplifies the problems with analyzing the "actual innocence" of a petitioner who pled before trial. *See Smith v. Baldwin*, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007) (en banc) ("We are aware of a potential incongruity between the purpose of the actual innocence gateway announced in *Schlup* and its application to cases involving guilty (or no contest) pleas.").

**SUTTON, Circuit Judge, concurring.** I concur in Judge Clay's thoughtful opinion and write only to mention two additional points. One concerns the question of "new evidence." Given the weaknesses in Connolly's "new evidence" argument, we need not address a problem that has concerned the other circuits—namely, whether there is a meaningful difference between "newly discovered" and "newly presented" evidence. *See Wright v. Quarterman*, 470 F.3d 581, 591 (5th Cir. 2006); *United States v. Davies*, 394 F.3d 182, 191 n.8 (3d Cir. 2005); *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003); *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003); *see also Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005). The second point relates to the Rule 404(b) question. Connolly, I would add, has declined to argue that we may not consider this evidence in deciding whether he has established an actual-innocence claim.

**BATCHELDER, Circuit Judge,** concurring and also joins in the separate concurrence.