# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1264

_____

Tonya Johnson Hyles

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: April 14, 2014
Filed: June 6, 2014

_____

Before RILEY, Chief Judge, MELLOY and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Tonya Johnson Hyles ("Hyles") of conspiracy to use interstate facilities to commit murder for hire in violation of 18 U.S.C. § 1958(a), aiding and abetting murder for hire in violation of 18 U.S.C. §§ 2 and 1958, possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i), and conspiracy to deliver a firearm to a felon in violation of 18 U.S.C. §§ 922(g)(1) and

371. She was sentenced to life imprisonment plus five years, and three years of supervised release. Hyles moved under 28 U.S.C. § 2255 to vacate her sentence, alleging ineffective assistance of counsel. The district court[1] denied her motion without an evidentiary hearing. She appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The facts of this case are set forth in *United States v. Hyles*, 521 F.3d 946 (8th Cir. 2008), *United States v. Cannon*, 475 F.3d 1013 (8th Cir. 2007), and *United States v. Tyrese Hyles*, 479 F.3d 958 (8th Cir. 2007). Reiterated here are the facts relevant to Hyles's current appeal.

On August 10, 2000, in Caruthersville, Missouri, Coy L. Smith testified against Tyrese D. Hyles ("Tyrese"), Hyles's husband (then boyfriend). After the preliminary hearing in the state drug case, Tyrese devised a plan to murder Smith. He asked David L. Carter, his cellmate at the county jail, to kill Smith. Tyrese promised to have Hyles bail Carter out of jail, and to give him a 1984 Pontiac in exchange for the murder. Carter agreed. That same day, Hyles bailed Carter out of jail, listing the car as collateral and telling the bondsman she had just sold the car to him.

That afternoon, Hyles asked Samuel Anderson to borrow a gun. Anderson agreed to give her the gun and said he would bring it to her house. According to Anderson, Hyles said "that's fucked up that Coy had testified against Tyrese" and "that she's going to get somebody to take care of his ass." Five to ten minutes later, Anderson brought a Beretta stainless steel gun to Hyles's residence. He handed her the gun and told her to place it in the cabinet. Carter, who was hiding in Hyles's

---

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

house when the gun was delivered, retrieved it from the cabinet and left. Carter never killed Smith. Instead, he returned the gun to Anderson a couple of days later.

About the same time, Tyrese and Hyles were also arranging to have Amesheo D. Cannon kill Smith. Phone records, from the evening of August 10, showed several phone calls from Tyrese's cell at the county jail to Hyles's residence—including calls at 7:50 and 8:34. There were also four calls from Cannon's mother's house in Memphis, to Hyles's house in Caruthersville—at 8:11, 8:23, 8:39, and 8:43. The last call lasted 51 minutes, overlapping with the second call from Tyrese's jail cell.

April Leatherwood, Cannon's girlfriend, testified that, on August 14, Cannon called her from Memphis, saying that Hyles was driving him to Caruthersville from Memphis. Hendrietta Nichols, also Cannon's girlfriend, testified that she and Hyles drove to Memphis to pick him up and he drove them all back to Caruthersville. A couple of days later, Anderson gave Cannon the same gun he had originally given Hyles. He testified he saw Cannon get out of the passenger side of Hyles's Pontiac, but could not see the driver. According to Anderson, Cannon stated that he was going to "take care of that for Tyrese."

On August 20, Hyles and Cannon drove by Smith's house. Hyles was driving the Pontiac, with Cannon in the passenger seat. Hyles and Cannon went to the county jail to talk to Tyrese. They were seen yelling up to Tyrese's cell window from outside the jail. The next morning, on August 21, the police found Smith shot to death in bed.

On June 11, 2001, Hyles signed a proffer letter with the government. It contained an agreement to "engage in negotiations involving specific concessions" by the government in exchange for further cooperation if the government believed the information in the proffer was "truthful, candid and meritorious." Pursuant to the

proffer letter, Hyles testified before a grand jury on October 18, 2001. The government later determined Hyles was untruthful and began to prosecute her.

Hyles maintains that her attorney advised her that she had entered into a non-prosecution agreement after her proffer letter but before her grand jury testimony. No such agreement ever existed. *Hyles*, 521 F.3d at 953.

II.

Hyles alleges ineffective assistance of counsel when her trial counsel (1) advised her to enter into a proffer agreement to provide statements to the government and grand jury and (2) told her she had entered into a non-prosecution agreement with the government. The district court denied Hyles's § 2255 motion without an evidentiary hearing. Hyles argues on appeal that the district court erred in denying her motion. This court reviews "the ineffective assistance issue de novo, but findings of underlying predicate facts are reviewed for clear error." *Anderson v. United States*, 393 F.3d 749, 753 (8th Cir. 2005).

To show ineffective assistance of counsel, a movant "must demonstrate: (1) his attorney's performance was deficient and fell outside the range of reasonable professional assistance; and (2) he suffered prejudice by showing that, absent counsel's ineffective assistance, there is a reasonable probability that the result of the proceeding would have been different." *United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001), *citing Strickland v. Washington*, 466 U.S. 668 (1984).

Failure to establish either prong of *Strickland* "is fatal to a claim of ineffective assistance." *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013). Because Hyles cannot show prejudice, this court declines to address whether her attorney's performance was deficient.

-4-

The only prejudice Hyles identifies is admission of her grand jury testimony at trial. Hyles insists she would not have testified before the grand jury if her counsel had not told her about the alleged non-prosecution agreement. Hyles's grand jury testimony admitted at trial was: (1) she was present in court for Smith's testimony at the preliminary hearing; (2) Tyrese asked her via telephone to bond Carter out of jail; (3) she signed the bond documents to get Carter out of jail; (4) she made arrangements to have Anderson bring the gun to her house; (5) she made arrangements to have Carter pick up the gun; and (6) Anderson got the gun back from Carter.

This grand jury testimony was cumulative of other trial evidence. There is no "reasonable probability that the result of the proceeding would have been different" had Hyles not testified before the grand jury. *See **Taylor***, 258 F.3d at 818. *Cf. **Smith v. Firestone Tire & Rubber Co.***, 755 F.2d 129, 132 (8th Cir. 1985) ("Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error."). Carter testified that (1) he and Hyles were both present at Tyrese's preliminary hearing, and (2) he picked up the gun from Hyles's house. Carter's bond documents, showing Hyles's signature, were admitted at trial, and the bail bondsman testified that Hyles bonded Carter out of jail. Anderson testified that (1) Hyles asked him for a gun, (2) he gave it to her at the house, and (3) he later retrieved the gun from Carter.

Hyles also testified she did not initially know why Tyrese asked her to bond Carter out of jail. Since this testimony was favorable to Hyles, it cannot constitute prejudice under *Strickland*. Hyles testified that Tyrese eventually told her the reason for bonding Carter out, but other trial testimony supported Hyles's knowledge of Tyrese's motivation. For example, Anderson testified that Hyles asked for a gun because she was "going to get somebody to take care of" Smith.

Hyles acknowledges that "the testimony of Anderson and Carter was corroborated by [her] own admissions," but complains this undercut her ability to attack their credibility. As this court noted, there was sufficient evidence of her guilt even without their testimony:

> [T]he Government . . . showed [Hyles] knowingly joined a conspiracy with Cannon to murder Smith. The Government presented evidence that several phone calls were placed from Cannon's residence to Hyles's around the same time Hyles and Tyrese were conspiring with Carter to kill Smith, that Hyles drove to Memphis to pick up Cannon and bring him to Caruthersville a few days before the murder, and that Hyles drove Cannon by Smith's house the evening before the murder.

*Hyles*, 521 F.3d at 955.

In light of the cumulative and immaterial nature of her grand jury testimony, Hyles cannot meet the *Strickland* prejudice prong.

III.

Hyles argues that her counsel was ineffective in advising her not to accept the government's plea offer. The district court denied Hyles's § 2255 motion without an evidentiary hearing. She appeals, claiming the district court erred in denying her motion and abused its discretion by not holding a hearing.

This court reviews "the ineffective assistance issue de novo, but findings of underlying predicate facts are reviewed for clear error." *Anderson*, 393 F.3d at 753. A district court's denial of an evidentiary hearing on a § 2255 motion may be reversed only for an abuse of discretion. *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013). A § 2255 motion may be dismissed without a hearing if (1) the criminal defendant's allegations, accepted as true, would not entitle him or her to

relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. *Id.* at 1103.

Assuming her attorney advised her to reject the plea,[2] Hyles cannot prove that her counsel's performance was deficient. This court's scrutiny of counsel's performance is "highly deferential," presuming that counsel's conduct "falls within the wide range of reasonable professional assistance." *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005). This court does not "second-guess strategic decisions or exploit the benefits of hindsight." *Id.* As evident in her direct appeal, Hyles's claims attacking the sufficiency of the evidence were colorable. *Hyles*, 521 F.3d at 954-56. Any advice that she hold the government to its burden at trial is not constitutionally unreasonable.

Hyles also cannot meet *Strickland*'s second prong. She maintained her innocence at trial, at sentencing, and on appeal. Nothing in the record indicates she wanted to accept the plea offer and would have acknowledged her guilt even if properly advised about the risks of trial. *See Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer."); *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998) ("Even if counsel's performance were somehow inadequate, Stevens failed to establish that there was any reasonable probability that he would have acknowledged his guilt had he been properly advised about the risks of trial.").

---

[2] Hyles's assertion that counsel encouraged her to reject the plea is contradicted by the record. Her trial attorney submitted an affidavit swearing he told Hyles her chances were "exceedingly slim" and urging her to accept the plea.

* * * * * * *

The judgment is affirmed.

_____