NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0101n.06

Case No. 24-3280

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 24, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| CARDELL D. HOUSTON, | ) | |
| Petitioner - Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| ANTHONY DAVIS, Warden, | ) | |
| Respondent - Appellee. | ) | OPINION |
| | ) | |

Before: CLAY, GIBBONS, and STRANCH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Cardell Houston was convicted in Ohio state court of two counts of murder and two counts of felonious assault. He appeals the district court's denial of his petition for a writ of habeas corpus. Although Houston's petition is untimely, he asserts a claim of actual innocence, which, under *Schlup v. Delo*, could allow us to consider the merits of his underlying constitutional claims. *See* 513 U.S. 298, 316 (1995). Because Houston's petition does not pass *Schlup*'s gateway, we are barred by the one-year statute of limitations in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") from considering his habeas claims on the merits. We thus affirm the order of the district court denying the habeas petition.

**I.**

In 2016, an Ohio grand jury indicted Cardell Houston on three murder counts, two counts of felonious assault, and one count of illegal weapons possession. The charges stemmed from the murder of William Barnes, Jr., who was shot from behind while sitting in the front seat of his

Hyundai Sonata in Cleveland, Ohio on November 20, 2015.[1] The events were captured on surveillance camera footage from neighboring houses. The Sonata parked behind a blue Chevy Trailblazer; two men got out of the Trailblazer and joined Barnes in the Sonata, with one in the passenger seat and the other in the rear seat on the passenger side. Flashes of light in the back seat area of the car were visible on camera; the two men got out, and the man who had been sitting in the back seat leaned inside, placing his left hand on the roof of the Sonata near the right rear door. That same passenger then returned to the Trailblazer. When he did so, he was carrying an object in his right hand that appeared on the video to be a firearm.

Neighbors called 911, and Barnes was found in the driver's seat and later pronounced dead. The trajectory of three of five bullet wounds in Barnes's body, as described in a doctor's testimony based on an autopsy, supported the prosecution's theory that Barnes had been shot by the person who had been in the back seat of the car and who had touched the roof after getting out.

In an effort to identify that person, investigators swabbed the roof of the Sonata and requested DNA testing. Lisa Moore, a state forensic examiner, testified at trial about the results of the testing. According to her testimony, the swab in question contained a "major" and a "minor" component, and "[i]n the absence of an identical twin, Cardell Houston is the source of the major DNA component obtained from [the swab sample] to a reasonable degree of scientific certainty." DE 7-2, Trial Transcript, Page ID 925–26, 929–31. In June 2017, the court found Houston not guilty of aggravated murder, but guilty of the two other murder counts and two counts of felonious assault. The State dismissed the illegal weapons possession charge. Houston was sentenced to a

---

[1] Houston waived his right to a jury trial, and the state trial court judge found the facts; these facts are also reported in the opinion of the Ohio Court of Appeals in Houston's direct appeal.

term of 15 years to life on Count 2, to be served following a three-year firearm specification associated with Count 2.

Houston appealed, and the Ohio appellate court affirmed his conviction. The Ohio Supreme Court declined to exercise jurisdiction over his appeal, and Houston's conviction became final on March 26, 2019, when he did not file a petition for certiorari with the Supreme Court of the United States within 90 days of the Ohio Supreme Court's decision.

Houston had also filed a petition for state postconviction relief in September 2018, which the trial court denied without a hearing on December 27, 2018. In support of his petition, Houston argued ineffective assistance of counsel—specifically, that his trial counsel did not adequately investigate or undermine the DNA evidence used to convict him—and adduced a letter from an expert, Dr. Dan Krane, elaborating on potential weaknesses with the DNA evidence. Houston appealed the denial of his petition for post-conviction relief, and the Ohio Court of Appeals affirmed. The Ohio Supreme Court declined to take jurisdiction over the postconviction review proceeding on March 17, 2020. AEDPA's one year limitation period, which had been tolled by the proper filing of the state postconviction petition, began to run on that date. 28 U.S.C. § 2244(d)(1) and (2); *see Lawrence v. Florida*, 549 U.S. 327, 337 (2007); *Boyce v. Warden*, No. 24-3363, 2024 WL 4664661, at *2 (6th Cir. Sept. 30, 2024). Houston filed the instant federal habeas petition more than a year later, on October 22, 2021

Because the limitations period had passed, consideration of Houston's arguments on the merits is barred by AEDPA absent a showing of new reliable evidence to pass through the *Schlup* gateway. *Hubbard v Rewerts*, 98 F.4th 736, 742 (6th Cir. 2024). The district court, recognizing this, held that his new evidence was insufficient to meet the *Schlup* standard, and denied his

petition. However, the district court granted a certificate of appealability limited to whether Houston's actual innocence claim satisfied the standard set by *Schlup*. Houston timely appealed.

## II.

We review the district court's denial of the habeas petition de novo. *Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012).

A habeas petitioner may be entitled to an equitable exception to AEDPA's one year statute of limitations if he makes a credible showing of actual innocence. *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005). "[T]o avoid a procedural bar to the consideration of the merits of his constitutional claims," or to "pass through" the *Schlup* "gateway," a petitioner must present "new evidence of innocence" sufficiently "strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316, 327. The petitioner must show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 326–27. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). *Schlup* includes a non-exhaustive list of examples of the kinds of evidence that could be at issue: "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324.

Houston's new evidence is the declaration of Professor Dan E. Krane and academic articles about DNA testing. Houston's argument is that the DNA sample was the only physical or testimonial evidence tying him to the scene of the crime, and that a scientific expert such as Krane could have lessened the force of this evidence. Dr. Krane reports that he is very familiar with the kinds of DNA testing used in forensic analysis carried out in crime laboratories. Krane declares

that he is not able to draw specific conclusions in this case without access to the underlying electronic data, but he states that, had he testified at trial, he would have been able to contextualize the term "major contributor" as it appeared in the state's testimony. DE 7-1, Postconviction Review Petition, Page ID 276-77. The clear import of Krane's declaration is that (1) he would have been able to dilute the force of the state's "major contributor" testimony and (2) that, if he had been able to review the underlying electronic DNA data, he might have been able to present an alternative theory of the case—one that could have supported Houston's innocence.

As an initial matter, the district court began by saying that Houston's new information was "not new" because "[i]t could have been discovered at trial through the exercise of reasonable diligence." DE 11, Order Denying Petition for Habeas Corpus, Page ID 1176. We have acknowledged a circuit split on the question of whether "new" evidence needs to be newly discovered—i.e., not available at the time of trial—or merely newly presented. *Cleveland*, 693 F.3d at 633. We have declined to resolve that split. In some cases, we have rejected the argument that evidence must be newly discovered. *Souter*, 395 F.3d at 595 n.9 (6th Cir. 2005); *Cleveland*, 693 F.3d at 633 (noting that *Souter* "suggests" that newly presented evidence is sufficient"). In other cases, we have analyzed newly presented evidence, while still refusing to explicitly decide the issue. *Gibson v. DeMartino*, No. 23-3798, 2024 WL 1349045, at *3 (6th Cir. Mar. 28, 2024); *Rizk v. United States*, No. 22-3834, 2023 WL 5275505, at *3 (6th Cir. Feb. 27, 2023). And in still other cases, we have only considered newly *discovered* evidence, on grounds that newly presented evidence is not truly "new" as contemplated in *Schlup*. *See e.g.*, *Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008); *Steele v. Jenkins*, No. 17-4171, 2018 WL 2144073 at *3 (6th Cir. Mar. 5, 2018). In any event, however, the district court properly concluded that Houston's "new" evidence did not rise to the level required by *Schlup*.

On appeal, we consider "all the evidence, old and new" and make "a probabilistic determination about what reasonable, properly instructed jurors would do." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted) (quoting *Schlup*, 513 U.S. at 327–29). Dr. Krane's declaration and associated material do not rise to the level of sufficiently reliable new evidence of innocence. To begin with, it is inherently speculative in nature: Dr. Krane writes about what he would *potentially* have been able to discover had he been able to examine the data. And this is simply not enough. We have routinely rejected claims of actual innocence based on speculation about what the evidence might have shown if further testing or investigation had been done. *Steele*, 2018 WL 2144073 at *3; *Gibson*, 2024 WL 1349045, at *3.

Krane's potential testimony about the true meaning of the term "major contributor" also falls short. To be sure, the DNA evidence was the strongest evidence linking Houston in particular to the scene of the crime. But the Krane declaration, even if it were not speculative, would only tend to support an inference that Houston had touched the car along with other people, or long before the murder—not that he had never touched it at all: "The fact that someone is a major contributor does not mean that he had more contact or more recent contact than other contributors with the site from which DNA was taken." (DE 7-1, Krane Declaration, Page ID 276). And Houston's claim was that he was a complete stranger to the victim.

And further, even if, once again, the declaration is given its full weight, this testimony would only question or weaken the prosecution's theory of the case: it does not support or even indicate an alternate set of facts in which Houston did not commit the crime. This court has recognized a distinction, in the context of the *Schlup* actual innocence standard, between evidence that supports factual innocence and evidence that merely "undermine[s] the state's case." *Hubbard*, 98 F.4th at 748. A habeas petitioner seeking to pass the *Schlup* gateway "cannot satisfy

the actual-innocence standard [] by undermining the state's case alone." *Id.* 745–48. While the line between exculpatory evidence and that which merely "undermines" is not always clear, we are confident this new information, which does not supply any alibi, point to any alternative perpetrator, or otherwise render the State's theory of the case impossible, is insufficient. *Cf. House*, 547 U.S. at 548 (stating that if the claimant's "challenge to the State's case [were] limited to the questions he has raised" about blood and semen evidence, "other evidence favoring the prosecution might well suffice to bar relief," but going on to consider evidence inculpating another potential perpetrator before declaring the *Schlup* standard satisfied). A reasonable juror could still conclude that Houston committed the crime despite his new evidence.

Houston also makes the point that in considering an actual innocence claim, certain rules are relaxed in favor of the claimant. This is true. Actual innocence is in some ways a powerful claim. In analyzing and predicting the effect of a petitioner's new evidence on a hypothetical finder of fact, the court is not bound by the rules of admissibility that would apply at trial, and the court may even weigh (and re-weigh) the credibility of testimony in a way that would ordinarily be impermissible. *See Hubbard*, 98 F.4th at 744 & n.3 (stating that "the object of the *Schlup* standard is to ascertain truth, as opposed to guaranteeing a criminal procedural right"); *Schlup*, 513 U.S. at 330–31. But it is the evidence itself that must support "a credible claim of actual innocence" and show that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Cleveland*, 693 F.3d at 633; *Schlup*, 513 U.S. at 327. And Houston's new evidence does not do that.

AEDPA's statute of limitation bars consideration of Houston's constitutional claims, and we affirm the order of the district court denying his petition for habeas relief.